**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| THE CINCINNATI INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | No. 12-2387-KHV |
| GAGE CENTER DENTAL GROUP, P.A., ET AL., | ) ) ) | |
| Defendants. | ) ) | |

_____

**MEMORANDUM AND ORDER**

The Cincinnati Insurance Company seeks a declaratory judgment that it is not obligated to

defend or indemnify Gage Center Dental Group, P.A., Anthony J. Pleviak, D.D.S., Robert S. Hall,

Jr., D.D.S., Michael T. Gardner, D.D.S., Darin W. Loewen, D.D.S., S. Bruce Banks, D.D.S., Jeffrey

L. Burkett, D.D.S. and Brenda Vink-Wilson in a pending state court lawsuit. This matter is before

the Court on Plaintiff's Motion For Summary Judgment [Or To Dismiss Or Stay] (Doc. #45) and

Defendants' Motion For Summary Judgment (Doc. #47), both filed May 20, 2013. For reasons set

forth below, the Court finds that defendants' motion should be sustained in part as to the duty to

defend. Pending resolution of the state court lawsuit, the Court reserves ruling on the question of

Cincinnati's duty to indemnify.

**Legal Standard**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c);

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535,

1538-39 (10th Cir. 1993). A "genuine" factual dispute is one "on which the jury could reasonably find for the plaintiff," and requires more than a mere scintilla of evidence. Liberty Lobby, 477 U.S. at 252. A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Id. at 248.

The moving party bears the initial burden of showing that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Justice v. Crown Cork & Seal Co., 527 F.3d 1080, 1085 (10th Cir. 2008). Once the moving party meets its burden, the burden shifts to the nonmoving party to show that a genuine issue remains for trial with respect to the dispositive matters for which it carries the burden of proof. Nat'l Am. Ins. Co. v. Am. Re-Ins. Co., 358 F.3d 736, 739 (10th Cir. 2004); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). As to these matters, the nonmoving party may not rest on its pleadings but must set forth specific facts. Fed. R. Civ. P. 56(e)(2); Matsushita, 475 U.S. at 586-87; Justice, 527 F.3d at 1085. Conclusory allegations not supported by evidence are insufficient to establish a genuine issue of material fact. Jarvis v. Potter, 500 F.3d 1113, 1120 (10th Cir. 2007); see Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 853 (10th Cir. 1996).

When applying this standard, the Court must view the factual record in the light most favorable to the party opposing the motion for summary judgment. Duvall v. Ga.-Pac. Consumer Prods., L.P., 607 F.3d 1255, 1260 (10th Cir. 2010). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. Liberty Lobby, 477 U.S. at 250-51. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

**<u>Facts</u>**

The following facts are either uncontroverted or where controverted, the contentions of each party are noted.

Gage Center is a Kansas professional association of eight dentists with its place of business in Topeka, Kansas. Drs. Gregory K. Johnson, Eric C. Johnson, Anthony J. Pleviak, Robert S. Hall, Jr., Michael T. Gardner, Darin W. Loewen, S. Bruce Banks and Jeffrey L. Burkett each own a one-eighth interest in Gage Center and each is an officer and director of Gage Center. Brenda Vink-Wilson is the office administrator.

<u>The Underlying Lawsuit</u>

On July 22, 2011, Drs. Gregory Johnson and Eric Johnson (the "Drs. Johnson") filed suit in the District Court of Shawnee County, Kansas against Drs. Pleviak, Hall, Gardner, Loewen, Banks and Burkett (the "doctor defendants") and Brenda Vink-Wilson (collectively, the "Gage defendants"). On March 19, 2012, the Drs. Johnson filed an amended petition (the "petition") which alleges as follows:

Beginning in approximately January of 2010, the doctor defendants became openly hostile with the Drs. Johnson, and forced them to significantly reduce their compensation. Gage Center, without input from the Drs. Johnson, restricted their ability to withdraw from their shareholder retained earnings accounts because their revenues were not sufficient to cover the administrative expenses. After only three months, the Drs. Johnson generated enough revenue to bring their retained earnings accounts to a positive balance. The doctor defendants then assumed that the Drs. Johnson were fraudulently inflating their practice revenues. In the spring of 2010, the Gage defendants, acting in their self interests and motivated by greed and jealousy, formed a secret,

-3-

unauthorized informal committee to investigate the alleged improper conduct by the Drs. Johnson. The predetermined outcome of the investigation was that the Drs. Johnson were conducting their practice improperly or with malicious motives. The secret committee was not created to protect the interests of Gage Center, but to deprive the Drs. Johnson of their practice while retaining all of their patients in order to increase the revenue of the doctor defendants. The Gage defendants were acting outside the scope of their roles as directors of Gage Center. The unauthorized committee and investigation was not conducted in good faith, but to impair the Drs. Johnson's practices and their ability to practice, in a manner that would harm Gage Center. The Gage defendants sought to impair the practices of the Drs. Johnson sufficiently to cause them to leave the practice, which would trigger restrictive competition covenants and thus create a windfall of patients for the doctor defendants. The formation and operation of the secret unauthorized committee violated Gage Center Articles of Incorporation and Bylaws. Further, the investigation created a hostile, disruptive atmosphere for the dental practices of the Drs. Johnson and made Gage Center an intolerable place in which to practice dentistry.

The Gage defendants violated the Gage Center Bylaws by conducting special meetings of the Board of Directors without notifying the Drs. Johnson. At these meetings, the Board has taken corporate action, including approval and adoption of inaccurate or incomplete written minutes of prior meetings.

Employees of Gage Center, including Vink-Wilson, communicated to Gage Center employees false and misleading information about the Drs. Johnson with the intent to increase hostility toward the Drs. Johnson and to injure their reputation and business. The Gage defendants attempted to persuade staff that the Drs. Johnson were improperly caring for their patients and were

motivated by greed. The Gage defendants told employees of the Drs. Johnson they were not meeting the standard of care to which other Gage Center dentists were held.

During November of 2010 through February of 2011, Vink-Wilson told many patients of the Drs. Johnson that they were being investigated for insurance fraud and that patients would need to find different dentists within Gage Center because the Drs. Johnson might lose their ability to bill insurance. At the direction of the doctor defendants, Vink-Wilson made false statements to patients of the Drs. Johnson with malicious intent to oust Drs. Gregory and Eric Johnson from employment with Gage Center. The Drs. Johnson have repeatedly demanded that the Gage defendants cease and desist from making such false and misleading statements, but they have refused.

In November of 2010 the secret committee produced a report which concluded that the Drs. Johnson were performing unnecessary procedures and charging insurance companies for unnecessary procedures. The Drs. Johnson disputed these findings. The Gage defendants continue to make false allegations of improper operation by the Drs. Johnson, but have taken no action on behalf of Gage Center.

At a Board of Directors meeting in June of 2011, Dr. Hall moved for Gage Center to inform patients of the Drs. Johnson that a particular insurance company had terminated coverage for treatment by the Drs. Johnson and to invite those patients to switch to the doctor defendants. In fact, this particular insurance company had never terminated or restricted coverage for the Drs. Johnson in any way. Dr. Banks seconded Dr. Hall's motion and the doctor defendants then unanimously approved the motion. The doctor defendants decided to place the Drs. Johnson on probation and to reduce their salaries by 50 per cent if they did not conduct themselves in accordance with Dr. Hall's motion. The Gage defendants intended to interfere with patients of the Drs. Johnson and their

employment agreement with Gage Center without regard for the best interests of Gage Center.

The Drs. Johnson experienced disruptions, unexplained cancellations of patient appointments and heated and unprofessional exchanges with Vink-Wilson in the presence of their patients. They have also suffered workplace rumors and innuendo as a result of "uncommon questioning of staff" who were encouraged to make false accusations about them. The conduct of the Gage defendants has caused the Drs. Johnson to lose patients and reduced their retained earnings accounts.

Count I of the state court amended petition alleges that the defendant doctors breached their fiduciary duties by forming the secret committee with the intent to injure the Drs. Johnson, by creating an environment of disloyalty, harassment, defamation and false accusations against the Drs. Johnson, and by giving employees permission to make false and defamatory statements regarding the Drs. Johnson.

Count II asserts that with the intent to injure the Drs. Johnson, the Gage defendants made or ratified false and defamatory statements about the Drs. Johnson with regard to their methods of practicing dentistry, their eligibility to accept certain third party insurance and their future of practicing dentistry.

Count III asserts a claim for intentional interference with business expectancies. It alleges that individually or together, the Gage defendants have intentionally acted to deprive the Drs. Johnson of the economic and non-economic benefits of their existing relationships with patients, including by making defamatory statements and false accusations.

Count IV asserts intentional interference with contract. Specifically, it alleges that the Gage defendants have intentionally or with reckless disregard sought to reduce the number of patients of the Drs. Johnson.

Count V asserts that the Gage defendants have conspired to defame and slander the Drs. Johnson.

The petition alleges that the Gage defendants have caused the Drs. Johnson to suffer harm to their professional reputations, lost income and profits and non-economic injuries including mental strain, anguish and suffering.

<u>The Insurance Policies</u>

Cincinnati Insurance Company issued Gage Center a Dentist's Package Policy, Policy Number EDN 001 06 34, which included a Business Owners Package Policy ("BOP Policy") and a Commercial Umbrella Policy ("Umbrella Policy"), with a policy period from December 1, 2007 to December 1, 2010. Doc. #46-1. Cincinnati Insurance issued a renewal policy to Gage Center containing the same coverages for the policy period from December 1, 2010 to December 1, 2013. Doc. #46-2.

<u>BOP Insurance Policy Provisions</u>

The BOP insuring agreement provides that Cincinnati will "pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," or "personal and advertising injury" to which the insurance applies. Doc. #46-1 at 5. It further provides that it will defend the insured against any "suit" seeking those damages. <u>Id.</u> The insurance only applies if the "bodily injury" or "property damage" is caused by an "occurrence." <u>Id.</u>

The agreement includes numerous exclusions, including the following on which Cincinnati relies.[1]

---

[1]     For the sake of clarity and brevity, the Court has omitted exclusions and language not relevant to the claims in the case.

**a.      Expected or Intended Injury**

"Bodily injury" or "property damage" reasonably [to] be expected to result from the intentional . . . acts of the insured.

**e.      Employer's Liability**

"Bodily Injury" to . . . An "employee" of the insured sustained in the "workplace" [or] arising out of the performance of duties related to the conduct of the insured's business.

**p.      Personal and Advertising Injury**

"Personal and Advertising Injury"

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury;"

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(3) arising out of breach of contract;

(15) To a person arising out of any . . . employment-related practices, policies, acts or omissions including but not limited coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person.

**r.      Employment-Related Practices**

"Bodily Injury" to [a] person arising out of any . . . employment related practices, policies, acts or omissions including but not limited [to] coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person.

Id. at 7-8, 12-13, 15.

The BOP Policy defines "personal and advertising injury" to include injury, including consequential "bodily injury," arising out of "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" or "[o]ral or written publication, in any manner, of material that violates a person's right of privacy." Id. at 24-25. It defines "property damage" to include physical injury to tangible property, including all resulting loss of use and "loss of use of tangible property that is not physically injured." Id. at 25.

<u>Umbrella Policy Provisions</u>

The Umbrella Policy provides that Cincinnati will pay the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury," "personal and advertising injury" or "property damage" arising out of an "occurrence" to which this insurance applies (a) in excess of the "underlying insurance" or (b) which is either excluded or not insured by "underlying insurance." <u>Id.</u> at 30. The Umbrella policy includes numerous exclusions, including the following on which Cincinnati relies:

**2. Breach of Contract, Failure to Perform, Wrong Description and Violation of Another's Rights**
"Personal and advertising injury" "[a]rising out of breach of contract," or "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another" and would inflict "personal and advertising injury."

**12. Employment-Related Practices**
Any liability arising from any injury to a person arising out of any employment-related practices, policies, acts or omissions including but not limited to criticism, demotion, evaluation . . . reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person.

**13. Expected or Intended Injury**
"Bodily injury" or "property damage" which may reasonably be expected to result from the intentional or criminal acts of the insured . . . even if the injury or damage is of a different degree or type than actually intended or expected.

<u>Id.</u> at 31-33.

The Umbrella Policy defines "personal and advertising injury" to include injury, including "bodily injury" arising out of" "[d]efamation of character, including oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or "[o]ral or written publication, in any manner, of material that violates a person's right of privacy." <u>Id.</u> at 45-46. It defines "property damage" to mean "[p]hysical injury to or destruction of tangible property including all resulting loss of use" or

-9-

"[l]oss of use of tangible property that is not physically injured." Id. at 46.

At a deposition in the underlying lawsuit, Dr. Eric Johnson testified as follows: He changed patient records to bill scaling and root planing treatments, when the hygienists did only a prophylactic treatment. Gage Center hygienists complained that he and Dr. Gregory Johnson provided unnecessary treatment to patients. In 2011, Delta Dental investigated the dental practices of the Drs. Johnson. The Kansas Dental Board also investigated them. Delta Dental determined that they waived co-pays, which violated their contract with Delta Dental. The Drs. Johnson entered a consent order in which they agreed not to bill prophylactic treatment as another type of procedure, and to submit to an independent review of their records. It would be reasonable for the Gage Center board members to be concerned about the Delta Dental investigation. Dr. Eric Johnson told a Gage Center employee that Delta Dental was investigating him and Dr. Greg Johnson, that Delta Dental could suspend their providership for two years, and that the Drs. Johnson could lose their dental licenses. He and Dr. Greg Johnson were also being investigated for fraud.

At a deposition in the underlying lawsuit, Dr. Greg Johnson testified as follows: He has no evidence that Drs. Pleviak, Loewen, Banks or Burkett ever communicated any false information about himself or Dr. Eric Johnson. He has no evidence that any Gage Center dentists told any person to say anything negative about him or instructed any employee to solicit any of his patients. Four Delta Dental dentists who reviewed his care thought that it was substandard as to record-keeping and co-pay waivers. The Gage Center Board of Directors have a legitimate concern about investigations involving patients.

At the time of the summary motion briefing, discovery in the underlying lawsuit was not completed, and no pretrial order had been issued.

-10-

<u>**Analysis**</u>

Both sides seek summary judgment on the question whether Cincinnati owes the Gage Center defendants a duty to defend or indemnify them in the underlying lawsuit.

**I.      Declaratory Judgment Act**

As a preliminary matter, defendants ask the Court to decline jurisdiction under the Declaratory Judgment Act, 28 U.S.C § 2201, or in the alternative to stay this action pending resolution of fact issues in the underlying state lawsuit.  Plaintiff asserts that defendants have not identified any fact issue that this Court must determine in order to declare the rights and legal obligations of the parties in this case.

The Declaratory Judgment Act provides in part that "[i]n a case of actual controversy within its jurisdiction," the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a). This case presents a live controversy between the parties – plaintiff contends that its insurance policy does not cover the underlying lawsuit while defendants contend that the policy does provide coverage.  But even when a suit otherwise satisfies the prerequisites of subject matter jurisdiction, the Court has discretion to determine whether and when to entertain an action under the Declaratory Judgment Act.  <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 282 (1995).  In determining whether to exercise its discretion, the Court considers (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; (4) whether use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether an alternative remedy is better or more effective. <u>Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n, Inc.</u>, 685 F.3d 977, 980-81 (10th Cir. 2012) (citing <u>State Farm Fire & Cas. Co. v. Mhoon</u>, 31 F.3d 979, 982-83 (10th Cir. 1994)).[2]

The first <u>Mhoon</u> factor weighs in favor of plaintiff.[3] This declaratory judgment action would settle the issue whether plaintiff owes a duty to defend defendants in the underlying state court litigation. It could also determine whether plaintiff is required to pay any judgment in the underlying lawsuit.

The second <u>Mhoon</u> factor also weighs in favor of plaintiff because this suit will serve a useful purpose in clarifying the legal relationship between the parties. The Declaratory Judgment Act "enables parties uncertain of their legal rights to seek a declaration of rights prior to injury." <u>Kunkel</u>

---

[2]        The parties do not cite <u>Mhoon</u> and do not specifically address the <u>Mhoon</u> factors. The Court nonetheless evaluates each of the <u>Mhoon</u> factors. <u>See</u> <u>Harpin v. Oakley Custom Homes, Inc.</u>, 232 F.3d 901, 2000 WL 1531819, at *2 (10th Cir. 2000) (Table) (district court did not abuse discretion when it evaluated <u>Mhoon</u> factors without soliciting input from parties).

[3]        Some courts have resolved the first two <u>Mhoon</u> factors in favor of exercising jurisdiction when a declaratory judgment action would settle the immediate controversy between the parties. <u>Mid-Continent Cas. Co. v. Village at Deer Creek Homeowner's Ass'n, Inc.</u>, 685 F.3d 977, 982 n.3 (10th Cir. 2012) (citing <u>Nw. Pac. Indem. Co. v. Safeway, Inc.</u>, 112 F. Supp.2d 1114, 1120 (D. Kan. 2000)). Others have found that the first two <u>Mhoon</u> factors counsel against exercising jurisdiction when the declaratory judgment action would leave unresolved related issues in parallel state court proceedings. <u>Id.</u> (citing <u>Qwest Commc'ns Int'l, Inc. v. Thomas</u>, 52 F. Supp.2d 1200, 1207 (D. Colo. 1999)). Different factual situations might explain these "seemingly differing standards." <u>Id.</u> (quoting <u>Scottsdale Ins. Co. v. Flowers</u>, 513 F.3d 546, 555 (6th Cir. 2008)). For example,

> [i]n some cases, the likelihood a declaratory judgment will resolve the immediate dispute between the parties may tip the scales in favor of exercising jurisdiction. In others, the existence of outstanding claims in a parallel state court action may counsel a different conclusion. Especially relevant may be whether the state court action would necessarily resolve the issues in the declaratory judgment action.

<u>Id.</u> (quoting <u>Scottsdale Ins. Co.</u>, 513 F.3d at 555).

v. Cont'l Cas. Co., 866 F.2d 1269, 1274 (10th Cir. 1989). An insurer has a duty to defend, to conduct settlement negotiations and to pay any settlement amount or judgment entered against its insured. Id. at 1275. A declaratory judgment action is therefore appropriate to clarify legal relationships before final adjudication of an underlying action. See Horace Mann Ins. Co. v. Johnson, 953 F.2d 575, 578 (10th Cir. 1991) (without declaratory judgment action, parties must wait until tort victim attempts to collect judgment from insurance carrier to litigate insurance coverage issues). As discussed above, this declaratory judgment action will clarify the legal relationship between plaintiff and defendants. It will resolve whether plaintiff owes a duty to defend and indemnify defendants in the underlying lawsuit.

The third Mhoon factor is whether plaintiff filed this declaratory judgment action to engage in a race to res judicata or for procedural fencing. This factor also favors plaintiff because it has a legitimate interest in having the coverage issue decided quickly, and defendants have pointed to nothing which suggests a race to res judicata or procedural fencing.

The fourth Mhoon factor is whether a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction. In weighing this factor, courts look to the nature of the claim, United States v. City of Las Cruces, 289 F.3d 1170, 1190 (10th Cir. 2002), and emphasize the importance of avoiding "fact-dependent issues . . . likely to be decided in another pending proceeding," Kunkel, 866 F.2d at 1276. See St. Paul Fire & Marine Ins. Co. v. Runyon, 53 F.3d 1167, 1169-70 (10th Cir. 1995) (affirming dismissal of declaratory judgment action based on Mhoon factors; emphasizing that state court case would resolve question of insurance contract coverage); Cont'l W. Ins. Co. v. Robertson Tank Serv., Inc., No. 12-1087-KHV, 2013 WL 1447067, at *3 (D. Kan. April 9, 2013). In analyzing this factor, the Court ascertains whether

questions in the federal suit can better be settled in the proceeding pending in the state court. See Mid-Continent Cas. Co., 685 F.3d at 986. Here, defendants argue that this lawsuit "involves fact-dependent issues that will be decided in the underlying lawsuit," Memorandum In Support Of Defendants' Motion For Summary Judgment (Doc. #48) filed May 20, 2013, at 22, but do not identify any such fact issues.[4] On this record, the Court cannot adequately assess whether this action would increase friction between federal and state courts and improperly encroach upon state jurisdiction.

Finally, as to the fifth Mhoon factor, the state court lawsuit will not necessarily resolve the controversy presented by this declaratory judgment action.

As to the duty to defend, the Mhoon factors favor allowing Cincinnati's declaratory judgment action to proceed in this Court. For reasons set forth below, however, the Court finds that it should stay a determination of the duty to indemnify until after resolution of the state court proceedings.

## II.     Duty To Defend

Cincinnati asserts that it has no duty to defend the Gage defendants in the underlying state court action. The parties appear to agree that Kansas law governs the issue whether Cincinnati has a duty to defend. Under Kansas law, an insurer has a duty to defend if there is any potential for liability under a policy of insurance. Freightquote.com v. Hartford Cas. Ins., 397 F.3d 888, 892 (10th Cir. 2005); Spruill Motors, Inc. v. Universal Underwriters Ins. Co., 212 Kan. 681, 686, 512 P.2d 403, 407 (1973). An insurer's duty to defend is thus broader than its duty to indemnify. Am. Motorists Ins. Co. v. Gen. Host Corp., 946 F.2d 1489, 1490 (10th Cir. 1991) (insurer may incur duty

---

[4]     Defendants also point out that the state court has not entered a pretrial order, and note that the issues and claims in the underlying lawsuit therefore have not been finalized. The Court's determination is based on the underlying petition and reasonably discoverable facts.

to defend even though it ultimately may have no obligation to indemnify). The insurer must undertake a good faith analysis of all information known to it or reasonably ascertainable by inquiry and investigation to determine the possibility of coverage. See id. (so long as insured can show nonfrivolous possibility that claim may fall within coverage, insurer has duty to defend); see Park Univ. Enter. v. Am Cas. Co., 314 F. Supp.2d 1094, 1101 (D. Kan. 2004) (under Kansas law, insurer has duty to defend whenever there is possibility of coverage, even if remote). An insurer must look beyond the effect of the pleadings and consider any facts brought to its attention or which it could reasonably discover; if such facts give rise to a "potential of liability" under its policy, the insurer bears a duty to defend. Spruill Motors, 212 Kan. at 686, 512 P.2d at 407; see Bankwest v. Fid. & Deposit Co., 63 F.3d 974, 978 (10th Cir. 1995) (under Kansas law, duty to defend determined by allegations of underlying complaint and facts discoverable to insurer). Under this approach, the duty to defend hinges on the potential for coverage, but the universe of information from which that potential must be ascertained is much greater than the universe used in an approach limited to the "eight corners"of a pleading and the applicable insurance policy. On the other hand, where a petition alleges an act which the policy clearly does not cover, there is no potential of liability. See Freightquote.com, Inc. v. Hartford Cas., Ins. Co., 316 F. Supp.2d 937, 941 (D. Kan. 2003)), aff'd, 397 F.3d 888 (10th Cir. 2005); Spivey v. Safeco Ins. Co., 254 Kan. 237, 245-46, 865 P.2d 182, 188 (Kan. 1993). An insurer has no duty to defend an action brought "wholly outside any coverage obligations assumed in the policy or when the insurer would have no liability if plaintiff secured a judgment against the insured." Spruill Motors, 212 Kan. at 685, 512 P.2d at 406.

The interpretation of an insurance policy, like other contracts, is a question of law. See AMCO Ins. Co. v. Beck, 261 Kan. 266, 269, 929 P.2d 162, 165 (1996). Courts give the terms in an

insurance policy their plain and ordinary meaning unless the parties have expressed a contrary intent. See Pink Cadillac Bar & Grill, Inc. v. U.S. Fid. & Guar. Co., 22 Kan. App.2d 944, 948, 925 P.2d 452, 456 (1996). The test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean. Id. A contract is ambiguous if it contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co., 248 Kan. 657, 659, 810 P.2d 283, 285 (1991). Where the terms of a policy of insurance are ambiguous or uncertain, conflicting or susceptible of more than one construction, the construction most favorable to the insured must prevail. Id. If the policy is not ambiguous, the Court must enforce it according to its terms. Id. The insured has the burden to prove coverage under the policy. See Shelter Mut. Ins. Co. v. Williams, 248 Kan. 17, 29-30, 804 P.2d 1374, 1383 (1991). The insurance company has the duty to show that a specific provision of the policy excludes coverage. Id.

The parties dispute whether the allegations against the Gage defendants in the underlying lawsuit establish the potential for coverage and thus triggered plaintiff's duty to defend. See Spruill Motors, 212 Kan. at 686, 512 P.2d at 407. The Gage defendants argue that the allegations create the potential for coverage for "property damage" or for "personal and advertising injury." Plaintiff contends that it has no duty to defend because the underlying complaint and reasonably discoverable evidence do not set out an actionable claim for property damage or personal and advertising injury.[5]

---

[5]        Plaintiff also argues that the claims in the underlying lawsuit do not constitute "bodily injury" under the policy. See Cincinnati's Brief In Support (Doc. #46) at 37-38. The Gage defendants appear to concede that the underlying lawsuit does not assert any claim for "bodily injury." See Defendant's Response (Doc. #49) at 29.

-16-

In the alternative, plaintiff argues that policy exclusions preclude a possibility of coverage. Specifically, it relies on exclusions for "expected or intended injury," "employer's liability," "employment related practices" and personal and advertising injury (a) caused with the knowledge that the act violated the rights of another, (b) arising out of oral material with knowledge of falsity and (c) arising out of employment-related practices including defamation.

The underlying suit alleges breach of fiduciary duty, defamation, intentional interference with business expectancy, intentional interference with contract and conspiracy to defame. The Court notes that for the most part, the parties do not address the elements of these claims. Thus, they fail to tie their arguments to an essential inquiry in determining the duty to defend – precisely what the plaintiffs in the underlying suit would have to prove to succeed on each of their claims against the Gage defendants.

A.    Potential For Coverage Under "Property Damage" Provision

The Gage defendants first assert that the "property damage" provision provides a potential for coverage for the claims in the underlying lawsuit. The BOP and Umbrella policies each define "property damage" as follows:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The underlying petition does not allege that the Gage defendants physically injured or destroyed any tangible property, so the Court is concerned only with part (b) of the definition of property damage. The issue becomes whether the underlying lawsuit alleges "loss of use" of "tangible property."

Unlike "property damage," the policies do not define "tangible property." Black's Law

-17-

Dictionary defines "tangible property" as "property that has physical form and substance and is not intangible. That which may be felt or touched, and is necessarily corporeal, although it may be either real or personal (e.g. ring or watch)." Black's Law Dictionary 1456 (6th Ed.). The Gage defendants note that in the underlying lawsuit, the Drs. Johnson allege that the Gage defendants impaired their practice with the goal of causing them "to leave the practice." Doc. #27-1 at 6. The Gage defendants assert that this language in the petition alleges loss of use of tangible property – the equipment and physical facilities of the dental practice. They note that the Tenth Circuit has held that claims for loss of use of business equipment are covered by policies which insure against "loss of use of tangible property that is not physically injured." Doc. #48 at 27 (quoting Park Univ. Enters., Inc., v. Am'n Cas. Co., 442 F.3d 1239, 1244-47 (10th Cir. 2006)).[6]

Plaintiff responds that the underlying lawsuit does not allege that the Gage defendants barred the Drs. Johnson from the dental practice building or that the Drs. Johnson lost use of dental tools and equipment. The Court agrees. The underlying lawsuit seeks to recover only for emotional and economic harm (including lost income, profits and patients), and not any loss of use of tangible

_____

[6]     In Park University, the underlying lawsuit alleged that Park University had violated the Telephone Consumer Protection Act by sending unsolicited fax advertisements. 442 F.3d 1239, 1244-45 (10th Cir. 2006). The parties agreed that an unsolicited fax could result in lost of use of tangible property, including the fax machine, ink and paper. Park University asserted that although it had intentionally sent the faxes, it had not intended to injure the recipients. The insurance company argued that the loss of use was not caused by an "occurrence," i.e. an "accident" because the insured had intended to send the fax. The insured claimed that it did not intend to injure the fax recipient because it believed that the fax was solicited, and therefore there was a possibility of coverage under the policy. The Tenth Circuit agreed, concluding that "under the minimal potential of liability standard" of Kansas law, an occurrence was possible under the insurance contract and thus there was a duty to defend under the property damage provision." Id. at 1247.

property.[7]  Nothing in the petition or in the record suggests that the underlying lawsuit seeks damages for loss of use of tangible property; at most it alleges a threat of loss of use of tangible property.  The Gage defendants therefore have not shown a potential for coverage under the property damage provision of the policy.

> B.  Potential For Coverage For "Personal And Advertising Injury"

The Gage defendants next assert that the "personal and advertising injury" provisions in the policies cover the claims in the underlying lawsuit.  The policies obligate plaintiff to defend claims for damages resulting from "personal and advertising injuries."  The policies define "personal and advertising injury" as injury arising out of, among other things, "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's good, products or services," and "[o]ral or written publication, in any manner, of material that violates a person's right of privacy, or otherwise defames a person's character."  The policies do not define slander or libel or disparagement.  The common meaning of slander or libel is the communication of false and defamatory words concerning a person which harm that person's reputation.  See Hall v. Kan. Farm Bureau, 274 Kan. 263, 276, 50 P.3d 495, 504 (2002) (elements of defamation, including slander and libel, include (1) false and defamatory words; (2) communicated to a third person; (3) which result in harm to the reputation of the person defamed).  The underlying complaint alleges that the Gage defendants defamed and disparaged the professional reputations of the Drs. Johnson and thereby breached their fiduciary duty and intentionally interfered with the business expectancies and contracts of the Drs. Johnson.  The allegations in the underlying

---

[7]  See ERA Franchise Sys., Inc., v. N. Ins. Co. of N.Y., 32 F. Supp.2d 1254, 1260 (D. Kan. 1998) (strictly economic losses like lost profits, loss of anticipated benefit of bargain and loss of investment not damage or injury to tangible property).

complaint raise the possibility of coverage under the personal and advertising injury provision. See Guardian Trust Co. v. Am'n States Ins. Co., No. 95-04073-SAC, 1996 WL 509638, at *9 (D. Kan. July 30, 1996) (allegations of breach of fiduciary duty and tortious interference with contact, including disparaging remarks made with malice created possibility of coverage under provision for personal injury arising from publication of material that slanders or libels person or organization or goods, products or services).[8]

C.       Policy Exclusions

Plaintiff asserts that even if the Gage defendants have established the potential for coverage for "personal and advertising injury," three separate exclusions preclude coverage for such injury. Specifically, plaintiff relies upon exclusions for "personal and advertising injury" (1) "[c]aused by or at the direction of the insured with knowledge that the act would violate the rights of another" and would inflict "personal and advertising injury;" (2) arising out of oral material, "if done by or at the direction of the insured with knowledge of its falsity;" or (3) "to a person arising out of any employment-related practices, policies, acts or omissions including but not limited to . . . criticism, . . . defamation, harassment, humiliation or discrimination directed at that person."

The insurer carries the burden to prove that an exclusion applies. See Shelter, 248 Kan. at 29-30, 804 P.2d at 1383. Courts interpret exclusionary clauses narrowly against the drafter, in favor

---

[8]      Plaintiff also asserts that the Umbrella policy does not provide coverage for personal and advertising injury because the policy requires an "occurrence," which the policy defines as an "accident." Although the policy does not define "accident," plaintiff cites Kansas cases finding that an "accident" does not include intentional injury. Lee Builders v. Farm Bureau Mut. Ins. Co., 281 Kan. 844, 854-55, 137 P.3d 486, 493 (2006). Plaintiff argues that the petition alleges that the Gage defendants caused intentional injury and thus the lawsuit is not covered. The Gage defendants, however, point to discovery which suggests that they did not intend the alleged injury. Specifically, in discovery the Drs. Johnsons conceded that they were being investigated for insurance fraud and that the Gage Center board and member doctors had legitimate concerns for conducting the investigation. The Court finds that the Gage defendants have set forth a possibility of coverage.

of coverage.  See, e.g., Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co., 281 Kan. 844, 858-59, 137

P.3d 486, 495 (Kan. 2006); Dillon Co. v. Royal Indem. Co., 369 F. Supp.2d 1277, 1284 (D. Kan.

2005) (ambiguities construed favorably to insured).

        1.     "With Knowledge" Exclusion

As noted, each policy excludes liability for personal and advertising injury "[c]aused

by or at the direction of the insured with knowledge that the act would violate the rights of another"

and would inflict "personal and advertising injury."  Plaintiff notes that the underlying lawsuit

alleges that the Gage defendants communicated false and misleading information about the Drs.

Johnson to other employees with the intent to injure their reputation and business.  Further, the

petition alleges that the Gage defendants told patients that the Drs. Johnson were being investigated

for insurance fraud, with the malicious intent to oust them from employment with Gage Center.

Plaintiff argues that the petition thus alleges "personal and advertising injury" caused by or at the

direction of the Gage defendants with the knowledge that the act would inflict "personal and

advertising injury," and thus any damages are excluded from coverage.

The Gage defendants counter that in their depositions, the Drs. Johnson admitted that Delta

Dental investigated them for questionable billing practices and insurance fraud.  The Gage

defendants argue that this evidence supports a conclusion that they took some of the actions of which

the underlying lawsuit complains in order to address wrongful conduct on the part of the Drs.

Johnson. They argue that they had legitimate reasons to create a committee to investigate the

practices of the Drs. Johnson, and did not do so with knowledge that such actions would violate the

rights of the Drs. Johnsons or inflict personal and advertising injury on them.

Count I of the petition alleges, among other things, that the defendant doctors breached their

fiduciary duties by forming the secret committee with the intent to injure the Drs. Johnson, by creating an environment of defamation and by giving employees permission to make false and defamatory statements regarding the Drs. Johnson. These allegations suggest that the defendant doctors did so with knowledge that the acts would inflict "personal and advertising injury." Under Kansas law, however, the elements of breach of fiduciary duty include (1) the existence of a fiduciary relationship, (2) a duty arising out of the fiduciary relationship, (3) a breach of the duty and (4) damages proximately caused by the breach of duty. CoBank, ACB v. Reorganized Farmer's Coop Ass'n, 334 F. Supp.2d 1273, 1277-78 (D. Kan. 2004). Intent to injure is not a required element. Under the facts identified by the Gage defendants, the Drs. Johnson could recover for breach of fiduciary duty based on false and defamatory statements even if the Gage defendants did not have knowledge that the act would inflict injury. The Court therefore finds that plaintiff has not shown that the "with knowledge" exclusion applies.

2.    With Knowledge of Falsity

Plaintiff notes the underlying complaint alleges that Gage Center employees made misleading oral statements at the direction of the Gage defendants, and that the statements were knowingly false. It contends that the exclusion for "personal and advertising injury. . . arising out of publication of material, if done by or at the direction of the insured with knowledge of its falsity" applies. The Gage defendants respond that the Drs. Johnson testified that they were investigated for insurance fraud and entered a consent agreement not to bill for certain procedures without appropriate diagnosis. The Gage defendants assert that these facts support a finding that it was reasonable for members of Gage Dental to be concerned about the fraud investigation. They further cite testimony of Dr. Greg Johnson that he has no evidence that the Gage defendants ever

communicated false information about the Drs. Johnson. They argue that this evidence supports a finding that the Gage defendants did not know that their defamatory statements were false. The Court agrees, and finds that plaintiff has not met its burden to show that the knowingly false exclusion applies.

3.     Employment-related Practices

Plaintiff asserts that the Gage defendants have no possibility of coverage because the policies exclude coverage for "personal and advertising injury" arising out of any "employment-related practices, policies, acts or omissions including but not limited to criticism, defamation, harassment, humiliation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person." The BOP policy, however, provides that the exclusion for personal and advertising injury applies only to "bodily injury." The BOP policy defines "bodily injury" as "bodily injury, sickness or disease." Plainly, the BOP exclusion does not exclude coverage for economic and reputational injury for which the underlying lawsuit seeks damages.[9]

As to the Umbrella policy, plaintiff invokes the employment-related practices exclusion. It points out that in the petition, the Drs. Johnson allege that the Gage defendants improperly reduced their pay and improperly disciplined, defamed, harassed and humiliated them in front of co-workers and patients. Accordingly, it argues that the plain language of the policy excludes coverage. The Gage defendants counter that at least some of their actions were not employment-related practices,

---

[9]     The Umbrella policy more broadly excludes liability for "*any injury* arising from employment-related practices, policies, acts or omissions," including but not limited to "criticism, defamation, harassment, humiliation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person." The Gage defendants note that the Umbrella policy defines "personal and advertising injury" as "injury, including bodily injury arising out of defamation or disparagement." They argue that given this definition, the exclusion for "any injury" arising from employment related defamation is limited to bodily injury. The Court rejects this strained reading.

but were actions based upon what the Drs. Johnson have conceded was an arguably reasonable and valid investigation by the Gage Center Board of Directors. The parties do not adequately address whether the alleged wrongful actions of the Gage defendants are properly characterized as employment-related practices. The Court notes, however, that although the underlying petition alleges that the Drs. Johnson have employment contracts with Gage Center, it also alleges that they are members of the Gage Center Professional Association. Moreover, the petition alleges that the Gage defendants breached a fiduciary duty to the Drs. Johnson, which clearly goes beyond an employment relationship. The Court finds that plaintiff has not met its burden to establish that the exclusion for "employment-related practices" applies.

**IT IS THEREFORE ORDERED** that Defendants' Motion For Summary Judgment (Doc. #47, be and hereby is **SUSTAINED IN PART**. The Court finds that under the provisions of the BOP policy and the Umbrella policy, Cincinnati Insurance Company has a duty to defend the Gage defendants in the underlying lawsuit.

**IT IS FURTHER ORDERED** that this case is otherwise **STAYED** pending resolution of the state court proceeding.

Dated this 1st day of November, 2013 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge